**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 10-cv-02105-REB-KLM

HAROLD M. "MICKEY" FRANCIS,
TOMMIE H. FRANCIS, and
TRAVELERS INDEMNITY COMPANY, as subrogee of the Petroleumplace, Inc.,

    Plaintiffs,

v.

STARWOOD HOTELS & RESORTS WORLDWIDE, INC., a Maryland corporation with a principal place of business in New York and a principal mailing address in Arizona d/b/a and through its alter egos,

    Defendant.

**ORDER RE: MOTION TO DISMISS ON GROUNDS OF
*FORUM NON CONVENIENS* AND MOTION FOR SUMMARY JUDGMENT**

**Blackburn, J.**

The matters before me are (1) defendant's **Motion for Summary Judgment** [#52],[1] filed January 7, 2011; (2) defendant's **Motion To Dismiss on Grounds of *Forum Non Conveniens*** [#51], filed January 7, 2011; and (3) **Plaintiffs Harold M. & Tommie Francis and Plaintiff Travelers Indemnity Company's Joint Motion To Supplement Response to Motion for Summary Judgment with Newly Discovered Evidence** [#97], filed July 11, 2011. I grant the motion for summary judgment and deny both the motion to dismiss and the motion to supplement as moot.

---

[1] "[#52]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## I.  JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  **FED.R.CIV.P.** 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10thCir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  **Concrete Works**, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  **Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999).  However, conclusory statements and

testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. **Rice v. United States**, 166 F.3d 1088, 1092 (10th Cir.), **cert. denied**, 120 S.Ct. 334 (1999).

### III. ANALYSIS

On November 15, 2008, while having dinner at the Le Méridien Heliopolis Hotel ("Le Méridien") in Cairo, Egypt, plaintiff Mickey Francis slipped and fell in a stairwell. Two persons alleged to be employees of the Le Méridien carried plaintiff back up the stairs and laid him down on the landing. He was transported to a local hospital and subsequently back to his home in Denver, Colorado. As a result of the accident, plaintiff is now a ventilator-dependent quadriplegic.

Francis brings claims against defendant under Egyptian law for negligence, including negligent training and supervision, premises liability, and moral prejudice. His wife, plaintiff Tommie Francis, brings a claim for loss of consortium. Plaintiffs also seek a declaration that defendant is liable for the actions of the Le Méridien and its employees under corporate veil-piercing and/or agency theories.

Defendant has now moved to dismiss on the basis of *forum non conveniens*[2] and also has filed a motion for summary judgment in which it maintains that it is not a proper party defendant. Because it seems illogical to consider whether venue lies in another forum if defendant is not properly sued in any court, I consider the summary judgment motion first. **See New Hampshire Insurance Co. v. INA Reinsurance Co.**, 1986 WL

---

[2] An appropriate reliance on the modern form of the doctrine. **See American Dredging Co. v. Miller**, 510 U.S. 443, 449 n.2, 114 S.Ct. 981, 986 n.2, 127 L.Ed.2d 285 (1994) (modern *forum non conveniens* doctrine applies only when alternative forum is abroad).

3

10110 at *1 (E.D. Pa. Sept. 17,1986). Finding it dispositive, I deny the motion to dismiss as moot.

It is both axiomatic and unremarkable that every suit must be prosecuted against a proper defendant. ***See Brezovski v. United States Postal Service***, 905 F.2d 334, 335 (10th Cir. 1990). Defendant asserts that it is not a proper defendant in this lawsuit because it does not own or manage the Le Méridien, nor does it employ, hire, train, or otherwise supervise any employees of the Le Méridien. Instead, the physical structure of the Le Méridien is owned by The National Company for Housing for Professional Syndicates, S.A.E., an Egyptian company, which, in turn, contracts with Méridien S.A.S., a French corporation, to manage the Le Méridien. Le Méridien S.A.S. is an indirect subsidiary of defendant, thus:

- Le Méridien S.A.S. is a wholly owned subsidiary of Starwood (M) France Holdings S.A.S., a French corporation;

- Starwood France is a wholly owned subsidiary of Starwood International Licensing Company SARL, a Luxembourg corporation;

- Starwood Licensing is a wholly owned subsidiary of The Sheraton LLC, a Delaware limited liability company;

- Sheraton has two general members. Starwood Hotels & Resorts Management Company Inc. owns 1% of Sheraton. Defendant owns the remaining 99%.

Defendant points out, and plaintiffs do not dispute, that each of the substantive claims brought herein requires plaintiffs to prove that defendant either owned or managed the Le Méridien and/or that it employed the persons who moved Mickey Francis after he fell. Thus, the central question in this case becomes whether plaintiffs

4

have shown a genuine issue of material fact as to whether the various wholly owned subsidiaries through which defendant is connected to the Le Méridien are mere alter egos or instrumentalities, or, alternatively, agents of defendant, thereby allowing plaintiffs to hold defendant liable for the alleged negligence of its subsidiary. Before answering those questions, however, I must determine which forum's law governs their resolution.

### A. CONFLICT OF LAWS

A federal court exercising diversity jurisdiction applies the choice of law rules of the forum state. **Klaxon Co. v. Stentor Elec. Mfg. Co.**, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). The Colorado courts, however, have not yet addressed the issue of which state's law applies in determining whether to pierce a corporate veil. I, therefore, must make an "*Erie* guess" as to how the Colorado Supreme Court would decide this issue. **See Boyd Rosene and Associates v. Kansas Municipal Gas Agency**, 174 F.3d 1115, 1119 (10th Cir. 1999); 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, **Federal Practice and Procedure** § 4507 (2nd ed. 1996).

I note first that Colorado courts generally look to the Restatement (Second) of Conflict of Laws to answer conflict of laws questions. **See Echostar Satellite Corp. v. Ultraview Satellite, Inc.**, 2009 WL 1011204 at *7 (D. Colo. April 15, 2009) ; **AE, Inc. v. Goodyear Tire and Rubber Co.**, 168 P.3d 507, 507 (Colo. 2007). Section 307 of the Restatement provides that "[t]he local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for

assessments or contributions and to its creditors for corporate debts." **RESTATEMENT (SECOND) CONFLICT OF LAWS** § 307 (1971).[3] Federal courts in other jurisdictions have relied on section 307 to find that the law of the state of incorporation governs veil-piercing claims. *See, e.g.*, *Judson Atkins Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 378 (7th Cir. 2008); *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 647 (5th Cir. 2002); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2nd Cir. 1995); *In re World Vision Entertainment, Inc.*, 275 B.R. 641, 662 (M.D. Fla. 2002); *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F.Supp. 345, 348 (M.D.N.C. 1995); *Select Creations, Inc. v. Paliafito Am., Inc.*, 852 F.Supp. 740, 774 (E.D. Wis. 1994). In addition, both the Tenth Circuit and at least one federal district court in Colorado also have cited to section 307 and adopted its applicability to these issues. *See Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1575 n.18 (10th Cir.), *cert. denied*, 111 S.Ct. 138 (1990); *Echostar Satellite Corp.*, 2009 WL 1011204 at *7.

Given these considerations, I find and conclude that the Colorado Supreme Court most likely would adopt section 307 of the Restatement and find that the law of the state of incorporation is applicable to veil-piercing issues.[4] In this case, application

---

[3] Although plaintiffs argue that section 306, not section 307, of the Restatement should control, the comments to that section clearly state that "this Section determines whether and in what circumstances a majority shareholder owes a fiduciary obligation to the corporation and to the minority shareholders." **RESTATEMENT (SECOND) OF CONFLICT OF LAWS** § 306 cmt. a. Because no such fiduciary obligations are at issue here, section 306 is inapplicable.

[4] Both parties note that Colorado courts generally follow the "most significant relationship" test in resolving conflict of laws issues. **RESTATEMENT (SECOND) OF CONFLICT OF LAWS** § 145. However, section 145 applies specifically to issues in tort. Because the question whether to pierce the corporate veil is not an issue sounding in tort, that section is inapplicable here. See 1 William Meade Fletcher, **FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS** § 41.10 (stating that veil piercing claims are not claims for substantive relief, but "[a]n attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action such as a tort or breach of contract").

6

of that principle points directly and solely to Maryland law as governing resolution of the veil-piercing issue.

Plaintiffs also advance an agency theory of liability. Section 292 of the Restatement provides that "[w]hether a principal is bound by action taken on his behalf by an agent in dealing with a third person is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties and the transaction under the principles stated in § 6." **RESTATEMENT (SECOND) OF CONFLICT OF LAWS** § 292. The factors articulated in section 6 include

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Id.* § 6(2). As distilled by section 292, however, these considerations boil down to just two essentials: 1) "whether the relationship between the principal and agent makes it reasonable to hold the principal bound by the agent's act and 2) *whether there is a reasonable relationship between the principal and the state whose local law is to be applied.*" *Id.* § 292 cmt. c (emphasis added); *see also Guardian Angel Credit Union v. MetaBank*, 2010 WL 1794713 at *6 (D.N.H. May 5, 2010). Thus, as with the veil-piercing issue (*see supra* note 4), the task here is to determine which jurisdiction has the most significant relationship to the alleged agency relationship, rather than to plaintiffs' underlying tort claims. *See* **RESTATEMENT (SECOND) OF CONFLICT OF LAWS** § 292 cmt. d ("The principal should not be held bound by the agent's act by application of

the local law of a state to which he has no reasonable relationship."); *see also* *Guardian Angel Credit Union*, 2010 WL 1794713 at *6.

Because the analysis of the existence of an agency relationship is the same under both New York law, urged as controlling by plaintiffs, and Maryland law, on which defendants rely, there are no conflicting policies or interests to consider, mooting the first section 6 factor. *See Alioto v. Hoiles*, 2010 WL 3777129 at *13 (D. Colo. September 21, 2010); *Fu v. Fu*, 733 A.2d 1133, 1142 (N.J. 1999). For the same reason, the fifth factor, which considers which state's law "will best achieve the basic policy, or policies, underlying the particular field of law involved" in the dispute, *Hoiles v. Alioto*, 461 F.3d 1224, 1232 (10th Cir. 2006); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 cmt. h, is inapplicable here.

As to the second factor, Colorado has "no interest in the case apart from the fact that it is the place of the trial of the action." *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 cmt. e. Conversely, with respect to the third factor, defendant is incorporated in Maryland, and the law of Maryland otherwise governs its conduct. Accordingly, the policies and interests of Maryland are affected by this suit more than those of any other jurisdiction. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 cmt. f ("In general, it is fitting that the state whose interests are most deeply affected should have its local law applied."). Likewise, respecting the fourth factor, because defendant is incorporated under the law of Maryland, application of Maryland law will protect defendant's reasonable, justified expectation that its corporate conduct would be governed and regulated by the laws of that state. *See id.* § 6 cmt. g ("Generally

speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state.").[5]

Considering the sixth factor, application of Maryland law gives recognition to defendant's decision to incorporate in Maryland, and, thus, creates predictable and uniform results and discourages forum shopping. **RESTATEMENT (SECOND) OF CONFLICT OF LAWS** § 6 cmt. I ("Predictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions."). Finally, Maryland agency law is not so complex or arcane as to require application by only a court familiar with its intricacies. *See Diaz v. Pereira*, 2010 WL 3636284 at *8 (D.N.J. September 9, 2010).[6]

Simply put, no other state or jurisdiction has a more significant relationship or greater interest than Maryland in determining whether defendant should be liable for the alleged torts of the Le Méridien via an agency theory. With these preliminaries squared away, I turn to plaintiffs' substantive claims.

### B.  VEIL PIERCING

Plaintiffs argue that to the extent Maryland law applies to their claims, summary judgment is improper because there are a genuine issues of material fact as to whether defendant's subsidiaries are mere instrumentalities or alter egos. Under Maryland law,

---

[5] Moreover, applying Maryland law protects the reasonable expectations of third parties such as plaintiffs. As discussed in more depth *infra*, defendant took steps to disclaim an agency relationship with the Le Méridien. Thus, plaintiffs reasonably should have expected that any suit against a Maryland corporation would be governed by the laws of that state.

[6] Nor would the application of New York law, which is similar in all relevant particulars, create any greater ease or efficiency in the determination of the issues in this case.

the alter ego doctrine applies when a corporation

> is so organized and controlled, and its affairs are so
> conducted, as to make it merely an instrumentality, agency,
> conduit, or adjunct of another corporation. The control
> necessary to invoke what is sometimes called the
> "instrumentality rule" is not mere majority or complete stock
> control but such domination of finances, policies and
> practices that the controlled corporation has, so to speak, no
> separate mind, will or existence of its own and is but a
> business conduit for its principal.

***Dixon v. Process Corp.***, 382 A.2d 893, 899 (Md. App. 1978) (footnotes omitted).

Maryland courts take a markedly restrictive approach to veil-piercing claims, however. ***See Iceland Telecom, Ltd. v. Information Systems and Networks Corp.***, 268 F.Supp.2d 585, 591 (D. Md. 2003) ***Hildreth v. Tidewater Equipment Co.***, 838 A.2d 1204, 1210 (Md. 2003); ***Dixon***, 382 A.2d at 899-900. Under Maryland law, merely showing instrumentality status is not enough to pierce the corporate veil. Instead, "the corporate entity will be disregarded only when necessary to prevent fraud or to enforce a paramount equity." ***Dixon***, 382 A.2d at 899 (citation and internal quotation marks omitted). ***See also Atchison & Keller, Inc. v. Sarubin***, 1991 WL 149793 at *3 (4th Cir. Aug. 9, 1991). Over thirty years later, this remains the law of Maryland. ***See, e.g.***, ***Hildreth***, 838 A.2d at 1209; ***Stein v. Smith***, 751 A.2d 504, 510 (Md. 2000). Thus, even if I assume *arguendo* that defendant's subsidiaries are mere instrumentalities, unless there is a genuine issue of material fact demonstrating a situation calling for the enforcement of a paramount equity,[7] I may not pierce one – let alone four – of defendant's subsidiaries' corporate veils.

---

[7] Plaintiffs present no evidence or argument suggesting the existence of fraud in this case.

Maryland courts have yet to consider a case in which it was found appropriate to pierce the corporate veil to enforce a paramount equity.  *See, e.g.*, *Baltimore Line Handling Co. v. Brophy*, 2011 WL 1026099 at *20 (D. Md. Feb. 2, 2011); *Wilshire Credit Corp. v. Karlin*, 988 F.Supp. 570, 575 (D. Md. 1997); *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc*, 728 A.2d 783, 789 (Md. App. 1999).  In fact, Maryland courts have yet to even define or delineate what constitutes a paramount equity.  *Travel Committee, Inc. v. Pan American World Airways, Inc.*, 603 A.2d 1301, 1318 (Md. App. 1992).  Nevertheless, plaintiffs point to several factors they believe suggest a genuine issue of material fact.  These include:  commonality of officers and directors; financial support, in the form of debt financing, renovations, and loan guarantees, ownership through a series of "conduits"; shared facilities and addresses; lack of identifiable operations; and that the subsidiaries "are operating for U.S. tax purposes"; and that defendant shares an insurance policy with its subsidiaries.

Considered singly or together, however, none of these factors convinces me that a paramount equity is at issue here.  Indeed, many of these same considerations have been found insufficient to support such a finding under Maryland law.  *See, e.g.*, *Gordon v. S.S. Vedalin*, 346 F.Supp. 1178, 1181 (D. Md. 1972) (noting that, despite "tenuous" evidence "of the existence of the corporation as a separate entity and not as the mere alter ego of [the shareholder]" and "significant doubt from the evidence that the legal niceties of corporate existence, such as the formal existence of stock and corporate meetings, were regularly, if ever, observed," ultimately, "under Maryland law, the corporate entity cannot be disregarded in this case"); *Hildreth*, 838 A.2d at 1209

(circumstances did not give rise to a paramount equity even though defendant was sole shareholder; was personally involved in the business transaction; continued to do business in Maryland under a name he knew to be registered by another corporation, contrary to public policy; and his actions suggested a clear intent to evade legal obligations); **Bart Arconti & Sons, Inc. v. Ames-Ennis Inc.**, 340 A.2d 225, 233-34 (Md. 1975) (no paramount equity found despite evidence that all three corporations commingled their equipment, operated out of one place of business, permitted the principal business entity to become dormant while the affairs of the other two corporations improved simultaneously, and made personal loans to the principals and transferred insurance policies to them); **Dixon**, 382 A.2d at 899-900 (refusing to disturb trial court's finding of no enforceable paramount equity where parent corporation conducted the management affairs of its subsidiaries, owned the equipment they used, hired employees, paid office rents, operated payrolls and unemployment matters, shared directors with all subsidiaries, and shared a uniform set of bylaws uniform to all of the corporations). These cases, in which no paramount equity was found to exist, involved facts far more suggestive of significant corporate entanglements than have been alleged or demonstrated here.

In light of Maryland's strenuous standards, I find that plaintiffs' evidence is simply insufficient to pierce the corporate veils of defendant's subsidiaries. Therefore, defendant's motion for summary judgment as to plaintiff's claim seeking to pierce the corporate veil will be granted.

## C. AGENCY

Plaintiffs also suggest that defendant is liable for the acts of the Le Méridien under an agency theory. Their legal discussion of the issue, however, is notably brief and supported by little more than *ipse dixit*.[8] (**See Plf. Resp. to Motion for Summary Judgment** at 22 [#55], filed January 25, 2011) (asserting without citation to the evidence of record that "there is undisputed evidence that Francis reasonably relied on the hotel being a Starwood entity based upon e-mails and advertisements that represent it to be Starwood"). Although the court is not required to scour the record in search of support for plaintiffs' claims, my own examination of the evidence before me does not support a claim that the Le Méridien was an agent of defendant.

Section 267 of the Restatement (Second) of Agency supplies the applicable standards for creation of an apparent agency under Maryland law. ***See Chevron USA, Inc. v. Lesch***, 570 A. 2d 840, 845 (Md. 1990); ***Jacobs v. Flynn***, 749 A.2d 174, 196-97 (Md. App. 2000). That section provides that

> [o]ne who represents that another is his servant or other agent and thereby causes a third person to justifiably rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

**RESTATEMENT (SECOND) OF AGENCY** § 267 (1958). In order to survive summary judgment, plaintiffs must show that (1) they were misled by appearances made by

---

[8] Moreover, plaintiffs cite but a single New York case in support of their agency argument. Although Maryland supplies the applicable law, it is largely immaterial whether New York or Maryland agency law applies, as both states apply the same general rules regarding the creation of an apparent agency. **See Sampson v. Contillo**, 865 N.Y.S.2d 634, 637 (N.Y. App. Div. 2008).

defendant that made them believe the Le Méridien was an agent of defendant; (2) this belief was objectively reasonable under all the circumstances; and (3) they relied on the existence of that relationship in making the decision to stay at the Le Méridien. **See Chevron USA**, **Inc**., 570 A. 2d at 845; **Homa v. Friendly Mobile Manor, Inc.**, 612 A.2d 322, 335 (Md. App. 1992). Stated differently, plaintiffs must show both that subjectively they were aware of facts that justified their belief in the existence of an agency and that objectively such belief was reasonable. **Chevron USA, Inc.**, 570 A. 2d at 845.

Although plaintiff Mickey Francis alleges that he "chose to stay at Starwood Hotels such as the *Le Meridien* (sic) because they are a U.S. Company which holds itself out to be safe and offers luxurious accommodations consistent with Starwood offerings" (**Plf. Resp. App.,** Exhibit 9, ¶ 5), the facts on which this conclusion allegedly is based do not justify such reliance objectively. That the toll-free phone number for the Le Meridien connects directly to, and is a registered trademark of, Starwood Hotels and Resorts Worldwide, Inc. (*id.*, Exhibit 9, ¶ 7), that defendant provides centralized reservation services and advertising for the hotels it manages, including the Heliopolis (*id.*, Exhibit 9 ¶¶ 20-21), and that the Heliopolis is part of defendant's preferred guest program (*id.* ¶ 23), do not support his assumptions. **See Braucher ex rel Braucher v. Swagat Group LLC**, 702 F.Supp.2d 1032, 1044-1045 (C.D. Ill. 2010) (centralized 800 telephone number reservation system, centralized internet reservation system, and frequent traveler program did not demonstrate agency); **Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC**, 878 A.2d 567, 583 (Md. 2005) (failing to find an agency relationship when "[t]he only evidence of any kind of relationship between

Realtime Gaming and KDMS and windowscasino.com is the fact that the windowscasino.com website contains a link to an IP address registered to KDMS"). In addition, although plaintiffs repeatedly stress that the Le Méridien is advertised as, and is, in fact, part of the "Starwood" brand, representations of product branding and affiliation are insufficient to establish an objectively reasonable belief in apparent authority. *See, e.g.*, *Carris v. Marriott International Inc.*, 466 F.3d 558, 562 (7th Cir. 2006) (finding assumption of apparent agency unreasonable as a matter of law because it is common knowledge that hotels are often franchised, and thus "plaintiff should have inquired into the ownership [of the property] rather than assume it was owned by Marriott"); *see also Triplett v. Soleil Group, Inc.*, 664 F.Supp.2d 645, 657 (D.S.C. 2009) (national advertising and brand name usage); *Chevron USA, Inc.*, 570 A.2d at 845-850 (national product branding); *Crittendon v. State Oil Co.*, 222 N.E.2d 561, 564 (Ill. App. 1966) (same, refusing the credit "that the prominent display of such brand name or symbol alone, would necessarily warrant the assumption that such service station was being operated as the agency of the owner of the brand name or symbol").[9]

Moreover, the presence of a prominently displayed disclaimer can undermine a claim of apparent agency. *See Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 166-67 (4th Cir. 1988); *Greil v. Travelodge International, Inc.*, 541 N.E.2d 1288, 1293 (Ill. App. 1989). Here, although there is no evidence whether a disclaimer is displayed in the Le Méridien itself, *cf. Greil*, 541 N.E.2d at 1293, defendant's website does contain such

---

[9] Moreover, unlike these cases, the Le Méridien has its own name and brand, making use of the Starwood brand only indirectly. *See Braucher*, 702 F.Supp.2d at 1045 ("The use of a brand name shows a franchise relationship, but the existence of a franchise does not create an agency.").

15

language. The first of these is located on the page setting forth the "Terms and Conditions for Use of This Site," and states:

> This website and the related websites contained herein (collectively the "Site") make available information on hotels, resorts, and other transient stay facilities (each a "property") owned, managed or franchised by Starwood Hotels & resorts Worldwide, Inc. and/or its subsidiaries and affiliates (collectively, "Starwood") and other travel-related or consumer goods and services.

(**Def. Reply App.**, Exhibit 3 at 1.) Another federal district court that examined this precise language found this disclaimer sufficient to represent that not all Starwood brand hotels are owned and managed by defendant, undercutting a claim of agency. *Triplett*, 664 F.Supp.2d at 657.[10] I concur, and, thus, find and conclude that this disclaimer sufficiently represents that not all Starwood brand hotels are owned and/or managed by defendant. Accordingly, no reasonable juror could conclude that it was objectively reasonable for plaintiffs to believe that the Le Méridien was an agent of defendant.

**THEREFORE, IT IS ORDERED** as follows:

---

[10] In addition, located under the heading "Use of Third Party Suppliers," defendant's website further provides that:

> [i]n order to offer the services related to this Site, and fulfill reservations or orders users place on this Site, Starwood may use third-party suppliers. You acknowledge and agree that the carriers, hotels and other suppliers providing travel or other services for Starwood may be independent contractors, and not agents or employees of Starwood.

(**Def. Reply App.**, Exhibit 3 at 4-5.)

1. That **Defendant Starwood Worldwide's Motion for Summary Judgment** [#52], filed January 7, 2011, is **GRANTED**;

2. That **Defendant Starwood Worldwide's Motion To Dismiss on Grounds of Forum Non Conveniens** [#51], filed January 7, 2011, is **DENIED AS MOOT**;

3. That **Plaintiffs Harold M. & Tommie Francis and Plaintiff Travelers Indemnity Company's Joint Motion To Supplement Response to Motion for Summary Judgment with Newly Discovered Evidence** [#97], filed July 11, 2011, is **DENIED AS MOOT**;

3. That plaintiffs' claims against defendant are **DISMISSED WITH PREJUDICE**;

4. That judgment **SHALL ENTER** on behalf of defendant, Starwood Hotels & Resorts Worldwide, Inc., a Maryland corporation with a principal place of business in New York and a principal mailing address in Arizona d/b/a and through its alter egos, and against plaintiffs, Harold M. "Mickey" Francis, Tommie H. Francis, and Travelers Indemnity Company, as subrogee of the Petroleumplace, Inc., as to all claims for relief and causes of action asserted herein; provided that the judgment shall be with prejudice;

5. That the Trial Preparation Conference, currently scheduled for Friday, October 21, 2011, at 3:00 p.m., as well as the trial, currently scheduled to commence on Monday, November 7, 2011, are **VACATED**; and

6. That defendant is **AWARDED** its costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated August 2, 2011, at Denver, Colorado.

                                                **BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge